*Decision will be entered under Rule 50.*

F. K. KETLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29003. Promulgated August 16, 1951.

---

*Francis J. Dwyer, C. P. A.*, for the petitioner.
*Harold H. Hart, Esq.*, for the respondent.

218

OPINION.

BLACK, *Judge:* We have found from the facts as stipulated that during the taxable year 1944 the petitioner received $77,595.59 as a distribution in liquidation of Ketler Co. This figure petitioner does not dispute although he claimed the figure was $83,297.14 on his return. At liquidation the corporation had 1,700 shares of stock outstanding and petitioner was its sole stockholder. The only question to be decided in this proceeding is whether petitioner's correct basis for 252 of his shares is $5,044.41, as determined by respondent, or $71,241.72, as contended by petitioner.

Petitioner contends that respondent has misinterpreted the facts and that respondent erred in failing "to recognize and give effect to a tax-free reorganization," because the distribution in liquidation of Monroe in 1941 was but the final step in a series of transactions which when considered as a whole constitute a reorganization. Petitioner argues that as the 252 shares of stock were received in an exchange falling within the purview of section 112 of the Code, the exchange is to be excepted from the gain or loss provisions of the Code. Consequently, petitioner contends his basis for the 252 shares of stock, since the distribution in liquidation was a part of a tax-free exchange, is to be computed by adding $15,000, his original cost of Monroe stock, and $56,241.72, which was the amount which Monroe owed petitioner at the time of its liquidation including the amount of Monroe's indebtedness which petitioner assumed and agreed to pay.

Respondent contends that the liquidation of Monroe in 1941 was not in pursuance of any plan of reorganization but that it was simply the ordinary liquidation of a corporation which had ceased to transact any business and is taxable in the ordinary way as the statute provides. See section 115 (c) and section 117 of the Code. Respondent contends that what happened was this: In 1941 Monroe owed considerable debts and had no assets except the 252 shares of common stock of Ketler Co. Petitioner was the only stockholder of Monroe. It was agreed to liquidate Monroe. Petitioner agreed to assume and pay the indebtedness of Monroe and this amount added to what Monroe owed him aggregated $56,241.72. All that petitioner received for this $56,241.72 was 252 shares of the common stock of Ketler Co. which had a fair market value of $5,044.41 at the time of liquidation. Therefore respondent says that petitioner had a loss as a creditor in 1941 upon the liquidation of Monroe and that this loss was measured by the difference between $56,241.72, petitioner's indebtedness including that which he had assumed, and $5,044.41, the fair market value of the 252 shares which he received, and that thereafter petitioner's cost basis of the 252 shares of stock was $5,044.41.

Respondent also contends that petitioner received nothing for his $15,000 cost basis of his stock in Monroe which was turned in at the time of liquidation and canceled and that this entire amount of $15,000, cost of petitioner's Monroe stock, was lost in 1941 and that petitioner cannot add it to the cost of his 252 shares of Ketler Co. stock which he received in the liquidation of Monroe. We think respondent must be sustained on the facts which have been stipulated.

Petitioner as we have already stated contends that the transactions culminating in the liquidation of Monroe in 1941 constitute a reorganization, satisfying the requirements of section 112 (g) (1) (D), as set forth in the margin.[1] Petitioner would have us make the following interpretation of the facts, in summary. Monroe of which petitioner was sole stockholder, became involved in financial difficulties during 1934. At that time petitioner organized another corporation, Ketler Co. of which he was the sole stockholder. Through a series of transactions taking place between 1934 and 1941 Monroe was reorganized, Monroe transferring its assets to Ketler Co. in exchange for the latter's common stock, which was in turn transferred to petitioner in 1941 upon the liquidation of Monroe. Before the reorganization petitioner owned all the stock of Monroe and after the plan was completed petitioner owned all the stock of Ketler Co., a corporation which was a continuation of the business of Monroe. Also during the interim period petitioner personally paid certain obligations of Monroe. The distribution in liquidation of Monroe was, therefore, in reality an exchange which was a part of a reorganization, as defined by section 112 of the Code that no loss was to be recognized in 1941 by himself upon the receipt of the distribution in liquidation of Monroe.

The various subsections of section 112 of the Code provide that under certain circumstances no gain or loss is to be recognized upon the sale or exchange of property. See section 112 (a) of the Code, which reads as follows:

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

It should be kept in mind that we do not have before us the question whether in 1934 when Ketler Co. was organized and Monroe transferred to it part of its assets in exchange for 252 shares of the common stock of Ketler Co. there was an exchange under section 112 (b) (4) which reads "no gain or loss shall be recognized if a corporation a

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

    \*       \*       \*       \*       \*       \*       \*

(g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (l)) and in section 113 (other than subsection (a) (22)).—

(1) The term "reorganization" means \* \* \* or (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, \* \* \*

party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

Assuming without deciding that the transaction in 1934 between Monroe and Ketler Co. was a statutory reorganization in which no gain or loss was recognized because it came within section 112 (b) (4) and 112 (g) (1) (D), nevertheless the transaction by which petitioner received 252 shares of Ketler Co. stock in 1941 when it was decided to liquidate and dissolve Monroe was a gain or loss transaction to petitioner unless his receipt of the 252 shares of Monroe stock in 1941 was a part of the plan of reorganization which took place in 1934 in which Monroe and Ketler Co. were parties to the reorganization. We do not think the stipulated facts show that what took place in 1941 was a part of a reorganization plan which started in 1934. On the contrary we think the facts show that in 1941 Monroe was insolvent and owed debts which it could not pay. Petitioner, its sole stockholder and its largest creditor, decided to liquidate Monroe and dissolve it. He agreed to assume and pay its debts and received as part payment for this indebtedness plus what Monroe owed him the only property which Monroe owned, namely, 252 shares of stock in Ketler Co. He really received nothing as a stockholder of Monroe. What he received was received as a creditor of Monroe. He thereupon had a loss of the difference between the indebtedness which he held against Monroe including that which he had assumed and the fair market value of the 252 shares of Ketler Co. stock which he received, this value being $5,044.41. This $5,044.41 became the cost basis of the 252 shares which he received. He also had a loss of the cost of his stock in Monroe, $15,000, for which he received nothing at all. See *H. G. Hill Stores, Inc.*, 44 B. T. A. 1182 and *Glenmore Distilleries Co.*, 47 B. T. A. 213. In the *H. G. Hill Stores* case we held that:

\* \* \* Where an insolvent corporation transferred all of its assets, subject to liabilities, to its principal creditor for "a sum" and in cancellation of the remaining "indebtedness," there was no distribution in complete liquidation within the meaning of section 112 (b) (6) of the Revenue Act of 1936, even though the creditor owned practically all of the stock of the insolvent corporation.

In so holding we said:

\* \* \* The present petitioner received no property from Penick as a stockholder. The property of Penick which it received was transferred to it, not as a distribution in liquidation of Penick, but for a stated consideration, "a sum" and the cancellation of remaining "indebtedness." Penick *distributed* nothing to stockholders. It was insolvent, with a very large deficit, and had nothing to distribute to stockholders. It sold its assets to pay a part of its debts. Since the facts do not support the only basis advanced for the determination of the Commissioner, that determination must be reversed as to these two items. \* \* \*

To the same effect is *Glenmore Distilleries Co., supra.*

While it is true that section 112 (b) (6) was involved in the *H. G. Hill Stores Co.* case and the *Glenmore Distilleries Co.* case and that section is not relied upon by petitioner here, nevertheless we think the controlling principle is the same. The only way that we could sustain petitioner in his contention that the transaction which took place between him and Monroe in 1941 was one in which no gain or loss should be recognized, would be to sustain him in his contention that the transaction was part of a plan of reorganization which began in 1934 in which Monroe and Ketler Co. were both parties, and continued on up to 1941. This we cannot do. Cf. *W. F. Kennemer*, 35 B. T. A. 415, affd. 96 F. 2d 177. In the *Kennemer* case, we said: "To support petitioner's position, the contested distribution must have been 'in pursuance of' the plan of reorganization finally executed." (Citing authorities.)

As we have already stated we cannot find from the facts which have been stipulated that the transaction between petitioner and Monroe in 1941 was part of a plan of reorganization which was started in 1934 in which Monroe and Ketler Co. were both parties and continued on until 1941. There is nothing in the record which would justify us in making such a finding. Such being our conclusion from the facts which have been stipulated, we think respondent's determination must be sustained.

*Decision will be entered for the respondent.*