323 F.2d 84
 Lena B. KNOX, deceased, the Citizens & Southern National Bank, Temporary Administrator, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
ESTATE of Inman H. KNOX, deceased, Blodgett Britton Knox, Executor, Respondents.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
B. Britton KNOX and Helen Knox, Respondents.
 No. 19670.
 United States Court of Appeals Fifth Circuit.
 September 24, 1963.
 
 Harold E. Abrams, M. E. Kilpatrick, Atlanta, Ga., for petitioner, Lena B. Knox, Decd., The Citizens & Southern National Bank, temporary admr., Smith, Kilpatrick, Cody, Rogers & McClatchey, Atlanta, Ga., of counsel.
 Hal Lindsay, Robert W. Spears, Wm. G. Grant, Atlanta, Ga., for respondents Knox.
 Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Ralph A. Muoio, Attys., Dept. of Justice, Crane C. Hauser, Chief Counsel, Glen E. Hardy, Atty., I. R. S., Washington, D. C., for Comr. of Internal Revenue.
 Before RIVES and GEWIN, Circuit Judges, and SHEEHY, District Judge.
 RIVES, Circuit Judge.
 
 
 1
 This petition for review involves deficiencies in income tax and additions to tax for the calendar year 1951 as to three taxpayers, Mrs. Lena Knox (hereafter Mrs. Knox) and her two sons, Inman Knox and Britton Knox. The three were the only stockholders in the Briary, Inc., a Georgia corporation, Mrs. Knox owning three shares and the two sons each owning one share. The three were the directors, and the two sons were the officers of the corporation. In 1941, Mrs. Knox delivered the certificate evidencing her three shares of stock to Inman and Britton, and had a verbal understanding with them that they were to manage the corporation, to hold the three shares of stock for Mrs. Knox during her lifetime, and, following her death, to divide it equally among those of her nine children who survived her. The certificate was assigned by Mrs. Knox to Inman and Britton, and the Tax Court found that the preponderance of the evidence indicates that she signed the assignment on the back of the certificate in 1941.
 
 
 2
 The property of the Briary consisted of eight apartment buildings in Atlanta, Georgia, housing fifty-eight individual apartments. Inman and Britton, along with Rankin-Whitten Realty Company, managed the property and collected the rents therefrom. The income went to pay salaries to Inman and Britton, and no dividends were paid. Inman was unmarried and lived with his mother and used a large part of his salary for her support. Mrs. Knox had no other source of income.
 
 
 3
 The Tax Court found that,
 
 
 4
 "In 1948, Lena (Mrs. Knox) who was then 78 years of age, suffered a stroke and thereafter became increasingly feeble in both mind and body. She was being given a sedative drug under her doctor's directions throughout the latter part of the year 1950 and the first half of 1951. At times her mind seemed clear and at other times she did not seem to understand the import of business matters discussed with her."
 
 
 5
 In another part of its opinion, however, the Tax Court found: "On this record we cannot find that Lena (Mrs. Knox) was mentally incompetent when she performed any act pertinent to this proceeding."
 
 
 6
 On March 6, 1951, Mrs. Knox's stock certificate was cancelled and new certificates, each representing one and one-half shares of stock, were issued to Inman and Britton. After the transfer, Inman and Britton purportedly held a joint meeting of the stockholders and directors of Briary at which a resolution was adopted dissolving the corporation and authorizing the distribution of all its property to Inman and Britton in liquidation of the corporation in accordance with the provisions of Section 112(b) (7) of the Internal Revenue Code of 1939. The minutes of the meeting were signed by Inman and Britton. Mrs. Knox was not present at the meeting although the minutes state that the meeting was held "pursuant to call and waiver of notice" and that "all members of the Board of Directors and all stockholders of the corporation were present in person."
 
 
 7
 On March 23, 1951, based on the resolution adopted at the above meeting, an order and judgment was entered by the Superior Court of Fulton County, Georgia, dissolving Briary. On the same day Inman and Britton caused Briary to execute and deliver a deed conveying to them all of its property and assets, subject to its liabilities "in satisfaction and payment of their respective shares of stock," which deed was duly recorded. A similar deed dated March 28, 1951, was executed by Inman, Britton and Mrs. Knox, in their capacities as directors of Briary, which deed was not recorded. Inman obtained Mrs. Knox's signature on this document.
 
 
 8
 On April 12, 1951, Inman and Britton each filed a Form 964, Election of Shareholders, under Section 112(b) (7) of the Internal Revenue Code of 1939, executed by each of them under penalties of perjury. The form filed by each recited that he was the owner of two and one-half shares of stock and that a plan of complete liquidation was adopted on March 6, 1951. No mention was made of any beneficial interest Mrs. Knox might have in the stock, and no other election form was ever filed.
 
 
 9
 The dissolution of Briary and the transfer of its assets to Inman and Britton caused concern among Mrs. Knox's other children. A suit was instituted on behalf of Mrs. Knox in the Superior Court of Fulton County seeking a conveyance to her of a 60 per cent undivided interest in the real estate formerly owned by Briary, and enjoining the payment of more than 40 per cent of the receipts from the real estate to Inman and Britton. A consent decree was entered in that proceeding on June 21, 1951, in which title to the real estate was decreed to vest 60 per cent in Mrs. Knox and 20 per cent each in Inman and Britton; Rankin-Whitten Realty Company, under its management contract, was directed to distribute monthly the net proceeds from the real estate, 60 per cent to Mrs. Knox and 20 per cent each to Inman and Britton; Inman and Britton were authorized to manage the property during Mrs. Knox's lifetime, and the court retained jurisdiction of the proceeding and of Mrs. Knox's 60 per cent interest in the property during her lifetime for the purpose of entering such orders as might be necessary from time to time to enable Inman and Britton to properly manage and finance the property.
 
 
 10
 The Tax Court found that, while Inman and Britton were the owners of record of all of the outstanding capital stock of Briary, Mrs. Knox was the beneficial owner of 60 per cent of that capital stock at the time it was liquidated. The Tax Court further found:
 
 
 11
 "A valid plan of complete liquidation of Briary was adopted on March 6, 1951.
 
 
 12
 "Elections to have the benefits of sub-paragraph (A) of section 112(b) (7) were not filed by shareholders who, at the time of adoption of the plan of liquidation, owned 80 per cent of the stock of Briary, within 30 days after the adoption of the plan of liquidation."
 
 
 13
 Whether the two findings just quoted are correct or not is the principal issue to be decided upon this petition for review. If the decision on that issue goes against the taxpayers, then as to Mrs. Knox there must further be decided: (1) whether the five-year period of limitation under Section 275(c) of the Internal Revenue Code of 1939 is applicable or the four-year period under Section 275(e); (2) whether Mrs. Knox's stock was involuntarily converted within the meaning of Section 112(f) of the 1939 Code; and (3) whether Mrs. Knox's failure to file a declaration of estimated tax for the year 1951 was "due to reasonable cause" within the meaning of Section 294(d) (1) (A) of the 1939 Code. We do not reach those issues, since we decide the principal issue with the taxpayers.
 
 
 14
 Whether Section 112(b) (7) of the 1939 Code is applicable to avoid recognition of gain on the liquidation of Briary depends, first, upon the date on which "a plan of liquidation" was adopted, and, secondly, upon the filing by the shareholders within thirty days after that date of their elections to have the benefit of that section.
 
 
 15
 Adoption of a plan of liquidation is the initial step to the applicability of Section 112(b) (7).[1] The section does not indicate how the adoption of a plan of liquidation is to be evidenced. See Shull v. Commissioner, 4 Cir., 1961, 291 F.2d 680. The determining element is "the intention to liquidate the business, coupled with the actual distribution * * * to the stockholders." Kennemer v. Commissioner, 5 Cir., 1938, 96 F.2d 177, 178; Shore v. Commissioner, 5 Cir., 1961, 286 F.2d 742, 745. That intention must be expressed or adopted by the corporation. The absence of a formal written plan is not fatal if there exists in fact an intention to liquidate, but those having the legal control of the corporation must entertain such an intention. See 1 Mertens Law of Federal Income Taxation, Sec. 9.79.
 
 
 16
 The Tax Court erred in holding that a valid plan of liquidation of Briary was adopted on March 6, 1951. Mrs. Knox, concededly the beneficial owner of 60 per cent of the capital stock, was not then a party to any such plan and it was not binding upon her or upon the corporation.
 
 
 17
 Under Georgia law,[2] a valid board of directors cannot be composed of less than three members. The purported "meeting" of the board of directors of Briary on March 6, 1951 was not a general or stated meeting provided for in any resolution or by-law, but purported to be a special meeting. Legally there could be no such special meeting in the absence of some form of notice served on each member of the Board, affording him or her an opportunity to participate and vote.[3] Though Mrs. Knox was one of the three directors, it is clear that she did not attend the purported meeting of the board on March 6, 1951, and had no notice thereof. It follows that that meeting was not competent to proceed with the transaction of business.
 
 
 18
 As of March 6, 1951, no plan of liquidation had been agreed on or was in the minds of either the beneficial holders of a majority of the stock or the board of directors of Briary, and the Tax Court erred in holding that a valid plan of liquidation of Briary was adopted on that date.
 
 
 19
 Legality was first injected into the so-called plan of liquidation on March 23, 1951, when the Superior Court of Fulton County acted on the petition for dissolution which had been filed by Inman and Britton in behalf of the corporation, and, as a court having jurisdiction of the subject matter and of the parties, ordered that the corporation be dissolved. The effect of that order was to adopt the theretofore invalid plan of liquidation set forth in the purported resolution, and to validate the authority of Inman and Britton as the owners of record of all of the outstanding capital stock of Briary to liquidate the corporation, including their authority to file their elections to have the benefit of Section 112(b) (7) of the Internal Revenue Code of 1939. That election was filed by them on April 12, 1951, well within the required thirty days.
 
 
 20
 The subsequent proceedings in the Superior Court of Fulton County had the legal effect of further ratifying the authority of Inman and Britton to secure the order of dissolution of Briary on March 23, 1951, and thereafter to file the elections to have the benefit of Section 112(b) (7), but were without other tax significance.
 
 
 21
 Under the peculiar facts and circumstances of this case, we hold that a plan of liquidation of Briary, Inc., was first validly adopted on March 23, 1951, and that within thirty days thereafter, namely on April 12, 1951, the written elections of the shareholders were filed, entitling them to the benefits of Section 112(b) (7) of the 1939 Code.
 
 
 22
 The decisions of the Tax Court are therefore reversed and the cases remanded to the Tax Court for appropriate action.
 
 
 23
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 "§ 112Recognition of gain or loss —
 * * * * *
 "(b) Exchanges solely in kind —
 * * * * *
 "(7) Election as to recognition of gain in certain corporate liquidations. —
 "(A) General rule. In the case of property distributed in complete liquidation of a domestic corporation, if —
 "(i) the liquidation is made in pursuance of a plan of liquidation adopted after December 31, 1950, whether the taxable year of the corporation began on, before, or after January 1, 1951; and
 "(ii) the distribution is in complete cancellation or redemption of all the stock, and the transfer of all the property under the liquidation occurs within some one calendar month in 1951, 1952, or 1953 —
 then in the case of each qualified electing shareholder (as defined in subparagraph (C)) gain upon the shares owned by him at the time of the adoption of the plan of liquidation shall be recognized only to the extent provided in subparagraphs (E) and (F).
 * * * * *
 "(C) Qualified electing shareholders. The term `qualified electing shareholder' means a shareholder (other than an excluded corporation) of any class of stock (whether or not entitled to vote on the adoption of the plan of liquidation) who is a shareholder at the time of the adoption of such plan, and whose written election to have the benefits of subparagraph (A) has been made and filed in accordance with subparagraph (D), but —
 "(i) in the case of a shareholder other than a corporation, only if written elections have been so filed by shareholders (other than corporations) who at the time of the adoption of the plan of liquidation are owners of stock possessing at least 80 per centum of the total combined voting power (exclusive of voting power possessed by stock owned by corporations) of all classes of stock entitled to vote on the adoption of such plan of liquidation; or
 * * * * *
 "(D) Making and filing of elections. The written elections referred to in subparagraph (C) must be made and filed in such manner as to be not in contravention of regulations prescribed by the Commissioner with the approval of the Secretary. The filing must be within thirty days after the adoption of the plan of liquidation, and may be by the liquidating corporation or by the shareholder."
 Internal Revenue Code of 1939, Sec. 112 (b) (7).
 
 
 [2]
 Ga.Code Ann., Title 22 § 1864
 
 
 [3]
 13 Am.Jur. Corporations, Sec. 952